Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7005 | **DATE** | 11/8/2000 |
| **CASE TITLE** | Greer vs. Bd of Education of the City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant the Board's motion (Doc 36-1) for summary judgment on all claims raised in Greer's Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 9 2000 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | NOV 09 2000 date mailed notice |
| SCT | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

FILED FOR DOCKETING
00 NOV -8 PM 1:14

Document Number 49

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TYRONE JUSTIN GREER,       )
                           )
         Plaintiff,        )
                           )
vs.                        )    99 C 7005
                           )
THE BOARD OF EDUCATION     )
OF THE CITY OF CHICAGO, formerly )
or presently known as the SCHOOL )
REFORM BOARD OF TRUSTEES;  )
a municipal corporation of the )
City of Chicago,           )
                           )
         Defendant.        )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is the Motion for Summary Judgment of Defendant Board of Education of the City of Chicago (the "Board"). For the following reasons, we grant the Board's motion.

### FACTUAL BACKGROUND

Plaintiff Tyrone J. Greer ("Greer") began working for the Board as a substitute teacher in 1986. (Pl. Dep. at 18.) In September 1987 he accepted a full-time basis position teaching English at Carver High School. (Id. at 19-20.) At the end of that

schoolyear Greer moved to a full-time basis position at South Shore High School ("South Shore"). (Id. at 21-23.) In September 1990 the Board appointed Greer as a regularly assigned teacher at South Shore. (Id. at 23.)

On or about July 17, 1997, Greer learned that Frank Horton ("Horton"), South Shore's principal, had closed Greer's position. (Id. at 25-28.) Soon thereafter, on or about August 4, Greer filed a with the EEOC a sex discrimination charge against the Board. (Pl. Dep. Exh. 3.) The charge alleged that decisionmakers had eliminated the positions of Greer and two other male English teachers while retaining less senior female teachers. (Id.)

Notwithstanding the closing of his position, Greer reported to South Shore on or about August 25, 1997. (Pl. Dep. at 32.) Horton instructed Greer to report to the Board's central office. (Id.) There Greer met with Laurin Clair who confirmed that Horton had closed Greer's position at South Shore. (Id. at 33.) Greer responded that he had filed discrimination charges against Horton with the EEOC. (Id. at 35-36.) Clair advised Greer to report to the Board's Human Resources Department ("Human Resources") and proceed with the reassigned teacher process. (Id. at 41.)

Upon reporting to Human Resources, Greer learned that he could work as a substitute teacher four days a week and have one day off to look for a permanent position. (Id. at 41-42.) He was also told that he would be terminated if he failed to

- 2 -

secure a permanent position within ten months. (Id.; Exh. D, Board's Reassigned Teacher Policy.) The following day, August 26, Greer received a letter confirming his status as a reassigned teacher. (Id.)

By October 1997 Greer began substitute teaching. (Id. at 54.) That month he received an invitation to interview for a position at Collins High School ("Collins"). (Id. at 55-57.) After the interview, school officials decided to give Greer a 60-day trial period. (Id.) Soon thereafter, Greer began teaching one English class and four reading classes at Collins. (Id. at 59.)

A month later, on or about November 17, Greer applied for teaching position 25420 at Collins. (Id. at 61-62.) Greer submitted his application to Rosa Vazquez ("Vazquez"), a recruiter in the Board's Department of Personnel. (Id. at 64-65.) At the time of Greer's application, Collins was evidently out of compliance with the Board's Faculty Integration Plan. (Id. at 66-67.) The Faculty Integration Plan had been designed to foster compliance with a 1980 federal consent decree (the "Consent Decree") intended to promote racial integration within the Chicago public school system. (Pl. Dep. Exh. 5.) Hiring Greer would place Collins further out of compliance with the Faculty Integration Plan and the Consent Decree because Collins already had too many African American teachers and Greer was African American. (Pl. Dep. at 66-67.) Consequently, Vazquez informed Greer that his race prohibited him from being

placed in position 25420. (Id. at 65-67.) Greer challenged Vazquez, maintaining that he could not be barred from the position due to his status as a reassigned teacher. (Id. at 66-67.)

In mid-January of 1998, Greer contacted Steve Heller ("Heller") of the Board's Department of Personnel. (Id. at 66-67.) Heller instructed Greer to obtain a waiver signed by Clement Smith, the principal of Collins, before applying for position 25420. (Id.) Heller based this advice on the Board's policy that teachers needed waivers in order to apply for jobs at schools out of compliance with the Faculty Integration Plan and Consent Decree. (Def. Exhs. E, F, G, H.) Without the waiver, Greer could not be assigned to the position. (Id.) Later that month, Xiomara Metcalfe, the Board's Director of Recruitment and Staffing, sent a letter to Smith indicating that Smith must sign a waiver in order to staff Greer in position 25420. (Id. at 47.) Metcalfe sent Greer a copy of the letter. (Id.)

Smith never signed the waiver. (Id. at 81-83.) Greer was not hired for position 25420 and ceased working at Collins after June 1998. (Id. at 83-84.) Because he failed to secure permanent employment, he was terminated in January 1999 pursuant to the Board's Reassigned Teachers Policy. (Id. at 92; Exh. D.) By August 1999 Greer had accepted a job at Gage Park High School which he continued to hold at the time of his deposition. (Id. at 93-96.)

Greer filed a second charge with the EEOC on August 27, 1998 alleging that the Board had discriminated against him based on his race and in retaliation for filing his first charge of discrimination. (Id. at 86; Pl. Dep. Exh. 9.) The EEOC issued a right to sue letter on December 14, 1998. Greer filed an action in federal court on December 31, 1998, which was ultimately dismissed without prejudice on October 8, 1999. Greer filed this action in federal court on October 26, 1999. The action alleges racial discrimination and retaliation by the Board in violation of Title VII. The Board now brings a motion for summary judgment against Greer.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's

case." Celotex, 477 U.S. at 325, 106 S.Ct. at 2554. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

## DISCUSSION

A. Threshold Procedural Matter

Local Rule 56.1 requires parties to serve each other with statements of material facts and responses. In the instant case, the Board filed its Uncontested Statement of Material Facts ("USMF") along with other summary judgment papers on August 14, 2000. When Greer appeared before this Court on August 24, he moved to strike the Board's USMF. The Court informed Greer of the Board's obligation under Local Rule

56.1[1] to submit the USMF, explained to Greer his responsibilities under the Rule, and gave Greer leave to amend his summary judgment papers to include a response to the Board's USMF. In addition, we instructed the Board's counsel to furnish a copy of Local Rule 56.1 to Greer.

On September 1, 2000, Greer filed a memorandum in response to the Board's summary judgment papers and attached several exhibits. Later, on September 18, Greer filed a document entitled "Plaintiff's Statement of Undisputed Material Facts and Response to Defendant Board's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts and Memorandum Or Lack Thereof Of Memorandum." The document sets forth five purported statements of undisputed material fact. Rather than being factual assertions, however, these statements amount to conclusions of law.[2] Following these five conclusions, Greer enumerates those statements with which he agrees. (Id. at ¶ 6.) He then lists the numbers of those statements with which he disagrees, (id. at

---

[1] Local Rule 56.1 requires non-moving parties to serve and file a concise response to the movant's statement that contains "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

[2] For instance, the first statement concludes that "[t]he Board is guilty of race discrimination in the Plaintiff's case...." (Pl. USMF at ¶ 1.)

-7-

¶ 7), and provides a photocopy of the Board's USMF with those paragraphs circled. For all of the statements, Greer bases his disagreement on "one or more of the following reasons: (a) uncertain of its truthfulness or statement is vague [;] (b) facts or information not fully stated or explained [;] (c) simply not true or lacking other relevant information." (Id.) Beyond these general statements, Greer offers neither particularized explanations nor references to the record as required by the Rule.

The Board points to Greer's noncompliance with Local Rule 56.1 and asks us to accept as true all factual assertions in the Board's USMF. Although we agree that Greer's document does not fully conform with the local rule, we recognize that Greer is proceeding pro se. Accordingly, we have parsed the record before us to determine whether Greer's papers have created any genuine issues of material fact. We find that they have not.

B. Race Discrimination

The gravamen of Greer's race discrimination claim is that he was "blocked" from being assigned to position 25420 because he is African American. In order to succeed, Greer must carry the burden of proving that the Board's reason for blocking Greer's assignment was a pretext for unlawful discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803 (1973). Greer could proceed either under a "direct evidence" analysis, Price Waterhouse v. Hopkins, 490 U.S. 228, 244-25 (1989), or a

"burden shifting approach," McDonald Douglas, 411 U.S. at 802. Because Greer has produced no direct evidence of racial discrimination, he must rely on the burden shifting approach.

Under the burden shifting approach, Greer must establish a prima facie case of race discrimination by showing that: (1) he was a member of a protected class; (2) he was qualified for position he sought; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. See Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 376 (7th Cir. 1998). If Greer fails to make this showing, the Board is entitled to judgment as a matter of law. See id. If Greer succeeds in making this showing, the burden of production shifts to the Board to offer a legitimate, non-discriminatory reason for its actions. See McDonnell Douglas, 411 U.S. at 802. If the Board meets its burden of production, then Greer can survive summary judgment only by proving by a preponderance of the evidence that the Board's reasons were pretextual. See id. at 803.

We turn first to the issue of whether Greer has established a prima facie case of race discrimination. We conclude that Greer has failed to establish that the Board treated similarly situated non-African American employees more favorably. When asked at his deposition whether he was aware of any white employees who sought positions at non-compliant schools, Greer replied, "No. That's why we have

discovery." (Pl. Dep. at 84.) Later, when asked whether he knew of any white reassigned teachers who requested waivers in order to obtain positions, Greer again responded, "No. And that's why we have discovery." (Pl. Dep. at 84.) As Greer correctly ascertained, he needed to produce some facts during discovery to establish that the Board treated non-African American employees more favorably than Greer. Because he has not done so, he has not established a prima facie case of race discrimination.

Moreover, even if Greer had established a prima facie case of race discrimination, the Board has proffered a legitimate, nondiscriminatory reason for its actions: its continuing efforts to comply with the Faculty Integration Plan and Consent Decree. The Consent Decree is still binding upon the Board. In order to implement some of the provisions of the Consent Decree, the Board adopted a Faculty Integration Final Report in September 1994. (Metcalfe Answ. Interrog. ¶ 1.) As an implementation measure, the Board adopted a policy whereby "all reassigned teachers, including white-American reassigned teachers, have a waiver before being appointed to a position at a school that was out of compliance with the federal consent decree." (Vazquez Amd. Answ. at 2; Clair Amd. Answ. at 2). All the Board did was submit Greer to the same waiver requirement that it imposed on all applicants at non-compliant schools.

Greer asserts that the Faculty Integration Plan did not apply to reassigned teachers. (Compl. at ¶ 12B.) His sole basis for this assertion is "wisdom." (Pl. Dep. at 67.) Greer is unable to point to any documentation whatsoever of this purported exception for reassigned teachers. Without further factual assertions, Greer has created no genuine issue of material fact with respect to the existence of any purported exclusion for reassigned teachers.

Greer also claims that Options-for-Knowledge applicants were exempt from racial compliance. (Compl. at ¶ 12F; Greer Dep. at 68.) When asked to document this claim, however, Greer was unable to do so. (Id.) He claims to have seen "a pamphlet or something" but cannot produce it. (Id.) Accordingly, he has created no genuine issue of material fact with respect to a purported exemption for Options-for-Knowledge applicants.

In addition, Greer contends that a provision of Board Policy 97-0723-P02 entitles him to position 25420 because he was the only qualified individual applicant. (Compl. at ¶ D.) That provision states that "[i]f a removed teacher's appointment to a vacancy would not be consistent with the Plan to Implement Provisions of Title VI of the Civil Rights Act of 1964, the appointment will not be made unless there is no teacher who holds the appropriate certification available to be consistent with the Plan." As the Board correctly notes, the plain language of this provision indicates it

applies only to Title VI issues. As far as we can determine from our own investigation of the record, Title VI was not a factor in the Board's approach either to filling position 25420 or to maintaining racial compliance generally. Greer has failed to explain the relevance of this Title VI-specific provision to the case at bar. Consequently, we do not find that the provision governs our analysis of the facts at hand.

Last, Greer argues that Vazquez, Heller and Metcalfe blocked him from position 25420 because of his race. (Compl. ¶ 12E.) On the facts before us, however, we find no indication that this was the case. If anything, Greer's gripe is with Principal Smith who received and refused to sign Greer's waiver form. Although Metcalfe wrote a letter to Smith about Greer's situation, the letter merely advised Smith that he had to sign a waiver pursuant to Board policy in order for Greer to continue with the application process. The fact that Metcalfe reminded Smith about the policy does not rise to the level of interference with or "blocking" Greer's job pursuits. Nor has Greer produced any facts that Vazquez or Heller did anything to block him. Thus, no genuine issues of material fact exist as to whether Vazquez, Heller and Metcalfe blocked Greer from position 25420 because of his race.

C. Retaliation

Greer also claims to have suffered retaliation after he filed a sex discrimination charge with the EEOC on August 4, 1997.[3] In support of this claim Greer points to several Board agents as culprits. Greer's retaliation claims cannot survive, however, for the following reasons.

1. Procedural Bar

Plaintiffs in Title VII actions in federal court may bring only those claims that were included in their underlying EEOC charges. See Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). The Seventh Circuit permits plaintiffs to raise in their complaints all grounds that (1) are "like or reasonably related" to those stated in the EEOC charge, and (2) can be reasonably expected to "grow out of" an administrative investigation of those charges. See id.; Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc). The first prong, likeness or reasonable relationship, requires that a factual relationship exist between the claims. See Cheek, 31 F.3d at 501. That is, the EEOC charge and the federal complaint must describe the same conduct and implicate the same individuals. See id. In addition, the charge must describe the discriminatory conduct in some detail. See id. at 502. The second prong of the test speculates as to what the EEOC might discover in the course

---

[3] Paragraph 13 of Greer's Complaint erroneously states the date of his sex harassment charge as August 27, 1997, when it in fact was August 4, 1997.

- 13 -

of an investigation. See id. at 500. The purpose of imposing these strictures is to uphold the EEOC's investigatory and conciliatory role, as well as to furnish notice to the charged party. See id.

Greer's Complaint alleges that on August 26, 1997, Laurin Clair "vindictively misled [him] to believe that [Principal] Frank D. Horton had correctly closed out his position with lies, misled [Greer] to believe that he was not an Options-for-Knowledge teacher, obtained [Greer's] personnel file and improperly removed key papers from his file to damage his efforts to retain his position of 47606 at South Shore as retaliation for filing Equal Employment Opportunity Commission charges against the Board on August [4], 1997." (Compl. at ¶ 13A.) All of these claims pertain to Greer's former position at South Shore, not his prospective position at Collins. The August 27, 1998 EEOC charge of retaliation, by contrast, concerns Greer's prospective assignment at Collins. It claims that because of the prior charge Greer had "not been placed in a regular position" nor had he been "assigned to a school." Thus the Complaint and the EEOC charges grow out of two distinct employment situations that are not reasonably related. Accordingly, Greer cannot bring his retaliation complaint into this federal forum because it rests on no underlying EEOC charge. See Cheek, 31 F.3d at 500. For the same reason, Greer's retaliation claim against South Shore Principal Frank D. Horton must fail. (Compl. at ¶ 13B.)

- 14 -

### 2. Failure To Cultivate Genuine Issues Of Material Fact

Greer also identified Collins Principal Smith and Board officials Vallas, Heller, Vazquez and Metcalfe as agents of retaliation. In order to state a claim of retaliation, Greer must have (1) engaged in statutorily protected expression, such as filing a charge with the EEOC; (2) suffered an adverse, job-related action by the employer; and (3) established a causal link between the protected expression and the adverse action. See Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1146 (7th Cir. 1997). We examine retaliation claims using the familiar McDonnell Douglas burden-shifting framework. See id. Once the plaintiff establishes a prima facie case, the burden shifts to the employer who may rebut by articulating non-retaliatory reasons for its actions. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). The burden then shifts back to plaintiff to prove the pretextual nature of those reasons. See id.

Greer's retaliation claim against Smith must fail because Greer has not carried his burden of showing a causal link between Greer's EEOC charge and Smith's refusal to sign a waiver. The Board has furnished a legitimate reason for Smith's refusal: adhering to the Faculty Integration Plan and the Consent Decree. (Metcalfe Answ. to Interrogs. at ¶ 2; Vallas Answ. to Interrogs. at ¶¶ 3, 7.) Greer has failed to offer any evidence suggesting that the Board's reason is pretextual. Consequently, we award summary judgment to the Board because Greer has failed to prove by a preponderance of the evidence that the Board's reason is pretextual.

Greer's retaliation claims against Vallas, Heller, Vazquez and Metcalfe likewise fail because Greer has failed to create a genuine issue of material fact as to their prior knowledge of Greer's EEOC charge. The employer's knowledge of a charge is essential to a retaliation claim. See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)). Greer's claims against Vallas, Heller, Vazquez and Metcalfe lack this essential element. At his deposition, Greer conceded that he did not know whether these officials had any knowledge of Greer's EEOC charges. (Pl. Dep. at 101-04.) Nor did Greer follow up during discovery to adduce any facts concerning the Board officials' alleged knowledge of his EEOC charge. Without this essential element, Greer's retaliation claims against Vallas, Heller, Vazquez and Metcalfe cannot survive summary judgment.

Furthermore, even if Vallas, Heller, Vazquez and Metcalfe did know about Greer's EEOC charge, mere knowledge of an employee's discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel actions against that employee. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Rather, the Board can still prevail if it proffers a legitimate reason for its agents' actions and Greer fails to establish that the reason is pretextual. See id. Here, the Board has proffered a legitimate reason for the Board's actions – its effort to abide by the Faculty Integration Plan and Consent Decree – and

Greer has failed to offer any evidence that this reason is pretextual. Accordingly, no genuine issue of material fact exists regarding the retaliation claims against Vallas, Heller, Vazquez and Metcalfe.

3. Failure To Abide By Arbitrator's Award

Last, Greer asserts that the Board retaliated against him by refusing to abide by an allegedly binding arbitration decision. (Compl. ¶ 13G.) The Board has stated a legitimate reason for its refusal, however. It asserts that under Illinois law, the subject of the arbitration fell outside of the scope of the collective bargaining agreement and therefore was not binding upon the Board. See 115 ILCS 5/4.5 (identifying layoff decisions and staffing assignments as prohibited subjects of collective bargaining). Greer offers nothing to counter this proffered reason. Consequently, he has failed to carry his burden and his retaliation claim regarding the arbitration award cannot survive summary judgment.

## CONCLUSION

For the foregoing reasons, we grant the Board's motion for summary judgment on all claims raised in Greer's Complaint.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: November 8, 2000